**SECURITIES and EXCHANGE COMMISSION, Plaintiff,**

v.

**PEERLESS–NEW YORK, Inc., Defendant.**

United States District Court
S. D. New York.
Jan. 3, 1958.

Henry R. Bright, Counsel for Div. of Trading & Exchanges Securities and Exchange Commission, New York City, for plaintiff.

McNabb, Sommerfield & James, New York City, for defendant.

EDELSTEIN, District Judge.

In an action by the Securities and Exchange Commission to enjoin the defendant, a registered broker-dealer, from violating § 15(c) (3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(c) (3), 15 U.S.C.A. § 78o(c) (3), and a rule adopted thereunder, the plaintiff has moved by order to show cause for a temporary injunction. The rule defendant is alleged to have violated, X-15c3-1 (17 CFR 240.15c3-1), relates to capital requirement standards applicable to registered broker-dealers, and provides essentially that the aggregate indebtedness of the broker-dealer shall not exceed 2,000 per centum of his net capital. The Commission submitted an affidavit by one of its Securities Investigators setting forth, with computations, three instances when his examination of the defendant's books disclosed violations of the net capital rule, on June 30, October 22, and October 25, 1957.

■ On the violation alleged for June 30, the defendant offers no dispute. But

for the other two, it makes vigorous denial and disputes the propriety of the computations disclosing the violations. The inclusion of a $1500 legal fee as a liability is contested on the ground that payment was not due until the sale of certain shares of an underwriting, and the sale had not yet occurred. But it appears that, after discussions with the Securities Investigator, the defendant included the fee in its trial balance, the Commission having taken the position that in the absence of proof to the contrary the corporation had a liability on account of the underwriting agreement in the sum of $1,500. In any event, the $1,500 would not make the difference between compliance and violation. The defendant complains of the disallowance of loans payable to its officers, despite the allegation that the loans were secured by an insurance policy on the life of one of the officers. But no reference is made to the type of policy, its terms or any other relevant data concerning its status. Defendant further complains of the deduction, in the Commission's trial balances, of a sum shown on defendant's books as an unrealized profit on certain stock transactions. While the rule does include unrealized profits in net capital, it must necessarily relate to a broker-dealer's inventory position in issued securities and not to trading profits or losses in "when issued" securities. The shares in question have been bought and sold on a "when issued" basis, and if the shares are not in fact issued, the unrealized profits will be permanently unrealized. Moreover, the trading in these shares is, as pointed out in the affidavit of the Securities Investigator, a "contractual commitment" as defined in sub-section (c) (5) of the rule, and sub-section (c) (2) (E) provides in part [(c) (2) (v) of 17 CFR 240.15c3-1] in connection with contractual commitments that "* * * in no event shall an unrealized profit on any closed transaction operate to increase net capital."

■■ The defendant also alleges that the Commission refused to consider an item of a block of stock, valued at over

$2,200, that was on loan to another broker. But in his answering affidavit, which is not contradicted, the Securities Investigator set forth that he had been informed by the president of the defendant corporation that these shares had been borrowed from another broker in the form of a personal loan, and it was these same securities that were loaned back without payment of any consideration by the defendant. An additional failure of the Commission to calculate a true and accurate trial balance of the defendant is charged in connection with including as part of its liabilities a sum claimed to be owing on an underwriting agreement; it is argued that this sum is due only upon delivery to defendant of a specified number of shares of the company, to be sold at $1 per share. But there is no dispute that the defendant had a firm commitment to take down 10,-000 of these shares at 50¢ per share, a commitment that was in force on October 25 and properly included as a liability.

■■ The major matter of dispute, however, is the provision of the rule that in computing the net capital there shall be deducted 30% of the market value of all securities. It is argued that the statutory authority to make rules and regulations was specifically limited to fixing the percentage "but not exceeding in any case 2,000 per centum" by which indebtedness could exceed net capital, § 8 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78h(b), 15 U.S.C.A. § 78h(b), and that the rule requiring a deduction from net capital of a percentage of the market value is unauthorized and a usurpation of the legislative function. But the Commission is charged, in enforcing the legislation, with making rules and regulations "necessary or appropriate in the public interest or for the protection of investors to provide safeguards with respect to the financial responsibility of brokers and dealers." Section 15(c) (3) of the Act, 15 U.S.C. § 78o(c) (3), 15 U.S.C.A. § 78o(c) (3). In carrying out this responsibility, the Commission necessarily defined the term "net capital" in such a manner as to render administration of the legislative command practicable. So long as such an administrative definition is reasonable and not inconsistent with Congressional mandate, it may not be disturbed by the courts. It is inconceivable that the term "net capital", in the context of the Act and in the complexities of our economy, be regarded as self-contained or self-defining. Indeed, the Commission has found it necessary to devote more than a full page of small print to the definition of the term in the Code of Federal Regulations. And where a capital item is one of fluctuating value, it would seem to be not only eminently reasonable but necessary and appropriate in the public interest in accord with the explicit statutory purpose, to define the item in terms of a discount from any particular day's quoted market value. Any attempt to borrow from a bank on the security of such a capital item would quickly prove the point. And nothing in this record indicates that the particular percentage discount employed is unreasonable.

■ The statement in the affidavit of the defendant's president that the firm's Certified Public Accountant gave an opinion that the defendant was not deficient in capital under the rule for the dates of October 22 and 25 is not borne out by the affidavit of the accountant. The affidavits submitted by the defendant do not in any way show that the plaintiff's calculations are not in conformity with the defendant's own books and records. There is and plaintiff has reasonable cause to believe that the defendant was not in compliance with the statute and the rule thereunder on the dates in issue. And inasmuch as the situation existed for three separate dates, it must be concluded that there is a likelihood of future noncompliance in the absence of the relief requested.

Accordingly, the preliminary injunction will be granted.